# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

STEPHEN HOWARD ROWE,

      Plaintiff,

      v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

      Defendant.

CIVIL ACTION NO. 3:21-cv-01511

(SAPORITO, M.J.)

## MEMORANDUM

In this matter, the plaintiff, Stephen Howard Rowe, seeks judicial review of the final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## I. BACKGROUND

On June 24, 2015, Rowe protectively filed a claim for disability insurance benefits and supplemental security income, asserting a disability onset date of August 27, 2011. Due to the denial of a prior

disability application, the plaintiff's effective onset date for disability insurance benefits is June 19, 2013—the day after the prior application was adjudicated—and the plaintiff's effective onset date for supplemental security income is a protective filing date of June 24, 2015. The date last insured for disability insurance benefits purposes is December 31, 2016.

Rowe's claims were initially denied by state agency reviewers on February 24, 2016. The plaintiff then requested an administrative hearing.

A hearing was held on December 4, 2017, before an administrative law judge ("ALJ"), Frank Barletta. In addition to the plaintiff himself, ALJ Barletta received testimony from an impartial vocational expert, Gerald W. Keating. The plaintiff was represented by counsel at the hearing.

On March 8, 2018, ALJ Barletta denied Rowe's application for benefits in a written decision. The plaintiff sought further administrative review of his claims by the Appeals Council. On July 26, 2019, the Appeals Council vacated the ALJ's March 2018 decision and remanded the matter for further proceedings.

A second hearing was held on August 4, 2020, before a different

ALJ, Therese A. Hardiman. In addition to the plaintiff himself, ALJ Hardiman received testimony from an impartial vocational expert, Nadine Henzes. The plaintiff was again represented by counsel at this second hearing.

On September 15, 2020, the ALJ denied Feather's application for benefits again in a second written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Rowe was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Rowe had not engaged in substantial gainful activity since June 19, 2013, the day after the decision denying his prior application for benefits. At step two, the ALJ found that Rowe had the severe impairments of: degenerative disc and joint disease of the lumbar spine; posttraumatic stress disorder ("PTSD"); unspecified depressive disorder; unspecified anxiety disorder; depressive disorder; impulse control disorder; major depressive disorder; and adjustment disorder.

At step three, the ALJ found that Rowe did not have an impairment or combination of impairments that meets or medically equals the

severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (eff. Apr. 1, 2018).[1] In doing so, the ALJ considered Rowe's limitations in four broad functional areas as a result of his mental disorders, finding moderate limitations in two functional areas—(1) interacting with others, and (2) concentrating, persisting, or maintaining pace—finding mild limitations in a third functional area—understanding, remembering, or applying information—and finding no limitations at all in the fourth functional area—adapting or managing oneself. *See generally* 20 C.F.R. §§ 404.1520a(c), 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments). In connection with listings 12.04, 12.06, and 12.15, the ALJ also considered whether Rowe's mental disorders were "serious and persistent," finding that his impairments

---

[1] We note that the agency's list of musculoskeletal disorders was extensively revised effective April 2, 2021, after this plaintiff's application for disability and disability benefits was adjudicated by the agency. *See generally* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164 (Dec. 3, 2020) (to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1).

had not required medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminished the symptoms and signs of his mental disorders, nor that he had achieved only marginal adjustment as a result. *See generally id.* § 12.00(G) (explaining process for using alternative paragraph C criteria to evaluate certain mental impairments).

Between steps three and four of the sequential-evaluation process, the ALJ assessed Rowe's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Rowe had the RFC to perform "medium work" as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c),[2] with the following limitations:

> [T]he claimant is limited to occasional climbing of stairs and ramps, no climbing of ladders, ropes or scaffolds, and occasional balancing, stooping, kneeling, crouching and crawling. The claimant is limited to frequent reaching in all directions, except no bilateral overhead reaching. The claimant must avoid concentrated levels of vibration and hazards, defined as heights. The claimant is limited to unskilled work activity as defined in the Dictionary of Occupational

---

[2] The Social Security regulations define "medium work" as a job that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighting up to 25 pounds." 20 C.F.R. § 404.1567(c); *id.* § 416.967(c).

> Titles (DOT) that is low stress, defined as only occasional decision making and only occasional changes in the work setting, with no interaction with the public.

(Tr. 33.).

In making these factual findings regarding Rowe's RFC, the ALJ considered his symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how he weighed the various medical opinions in the record. *See generally* 20 C.F.R. §§ 404.1527, 416.927; Soc. Sec. Ruling 96-2p, 1996 WL 374188.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Rowe was unable to perform his past relevant work as a forklift driver, overhead crane operator, paint mixer, painter, or a dishwasher, as actually or generally performed.

At step five, the ALJ concluded that Rowe was capable of performing other work that exists in significant numbers in the national economy. Based on his age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that

Rowe was capable of performing the requirements of representative occupations such as box maker (DOT # 794.684-014), packer (DOT # 920.587-018), and bagger (DOT # 920.687-014). Based on this finding, the ALJ concluded that Rowe was not disabled for Social Security purposes.

The plaintiff sought further administrative review of his claims by the Appeals Council, but his request was denied on July 2, 2021, making the ALJ's September 2020 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed his complaint in this court on September 1, 2021. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.  DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security

disability insurance benefits and supplemental security income administrative decisions).

Rowe asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) Rowe was deprived of a constitutionally valid administrative adjudicatory process because statutory removal protections afforded to the Commissioner violate the separation of powers; (2) the ALJ failed to properly evaluate a medical opinion by a consultative examining psychologist, Karl A. Hoffman, Ph.D.; (3) the ALJ failed to properly evaluate a medical opnion by a consultative examining psychologist, Andrew Cole, Psy.D.; and (4) the ALJ failed to include all of Rowe's claimed limitations or impairments in the hypothetical posed to a vocational expert at the administrative hearing.

## A. Constitutional Separation of Powers Issue

Citing a recent decision by the Supreme Court of the United States, *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), the plaintiff contends that he was deprived of a constitutionally valid administrative adjudicatory process because statutory removal protections afforded to the Commissioner of Social Security violated the separation of powers.

In *Seila Law*, the Supreme Court of the United States held that statutory removal protections afforded to the director of the Consumer Financial Protection Board ("CFPB"), which provided that the CFPB director, who serves for a fixed term of five years, 12 U.S.C. § 5491(c)(1), could be removed only for "inefficiency, neglect of duty, or malfeasance in office," *id.* § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Seila Law*, 140 S. Ct. at 2197. One year later, the Supreme Court applied *Seila Law* in considering a similar challenge concerning statutory removal protections afforded to the director of the Federal Housing Finance Agency ("FHFA"), which provided that the FHFA director, who serves for a fixed term of five years, 12 U.S.C. § 4512(b)(2), could only be removed "for cause," *id.*, and held that this provision violated the separation of powers as well. *Collins v. Yellen*, 141 S. Ct. 1761, 1783–84 (2021) ("A straightforward application of our reasoning in *Seila Law* dictates the result here.").

"Applying the holdings in *Seila Law* and *Collins* here makes it clear that the provision for removal of the Commissioner of Social Security, 42 U.S.C. § 902(a)(3), violates the separation of powers." *Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 366 (M.D. Pa. 2021). Like the CFPB and the FHFA,

the Social Security Administration is an independent agency led by a single individual, the Commissioner, who serves a fixed term of six years and may only be removed by the President for "neglect of duty or malfeasance in office," 42 U.S.C. § 902(a)(3). *See Collins*, 141 S. Ct. at 1784; *Seila Law*, 140 S. Ct. at 2197; *Stamm*, 577 F. Supp. 3d at 366; *see also* U.S. Dep't of Justice, Off. of Legal Couns., *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542, at *7 (July 8, 2021).

The plaintiff argues that he was deprived of a valid administrative adjudicatory process because, under 42 U.S.C. § 405(b)(1), only the Commissioner can make findings of fact and issue final decisions as to benefits eligibility. Because the ALJ's delegation of authority came from the Commissioner, the plaintiff argues that it is constitutionally defective. The plaintiff further argues that the ALJ decided the case under regulations promulgated by the Commissioner without constitutional authority to issue those rules.

Although it appears to be clear that the statutory removal protections afforded to the Commissioner of Social Security violate the separation of powers, it does not follow that this unconstitutional

removal restriction requires the court to set aside an unfavorable disability benefits determination by an ALJ. For one thing, a constitutionally defective statutory removal provision does not render the Commissioner's *appointment* invalid, and thus it does not automatically void the ALJ's actions under the Commissioner. *Stamm*, 577 F. Supp. 3d at 366–67. As the Supreme Court explained in *Collins*:

> All the officers who headed the FHFA during the time in question were properly *appointed*. Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA in relation to the [administrative action at issue] as void.

*Collins*, 141 S. Ct. at 1787. Moreover, the ALJ who denied the plaintiff's disability claim was not appointed by a Senate-confirmed Commissioner who was subject to the removal restriction imposed by § 902(a)(3). Rather, this ALJ was appointed by an Acting Commissioner who was not subject to the same statutory removal restriction.[3] *See Collins*, 141 S. Ct.

---

[3] In response to the Supreme Court's decision in *Lucia v. Sec. & Exch. Comm'n*, 138 S. Ct. 2044 (2018), and in light of an executive order concluding that "at least some—and perhaps all—ALJs are 'Officers of the United States' and thus subject to the Constitution's Appointments

*(continued on next page)*

at 1781; *Stamm*, 577 F. Supp. 3d at 366–67.

Moreover, pursuant to the Supreme Court's analysis in *Collins*, "[r]elief is available in removal challenges only where officials subject to the challenged removal restrictions cause the alleged injuries, and where those restrictions themselves caused 'compensable harm' upon plaintiffs." *Stamm*, 577 F. Supp. 3d at 368 (citing *Collins*, 141 S. Ct. at 1789).[4] Here, the action challenged by the plaintiff is the ALJ's decision denying benefits. The plaintiff has alleged no direct action by the

---

Clause," Exec. Order No. 13843, 83 Fed. Reg. 32755 (July 10, 2018), the Acting Commissioner of Social Security at that time, Nancy Berryhill, ratified the appointments of all previously appointed ALJs and approved those appointments as her own on July 16, 2018. *See* Soc. Sec. Ruling 19-1p, 2019 WL 1324866, at *2; *Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 152 (3d Cir. 2020); *Charran v. Saul*, 509 F. Supp. 3d 80, 87 (D.N.J. 2020).

    [4] In his reply brief, the plaintiff argues that a presumption of harm should be read into *Collins*. (Doc. 24, at 10 ("*Collins* suggests that harm should be presumed . . . .").) We find no such suggestion in *Collins*. Indeed, previously in *Stamm* and now here, we have joined other courts in finding that *Collins* suggests the precise opposite: a required showing that an unconstitutional removal provision inflicted compensable harm. *See Collins*, 141 S. Ct. at 1789; *Lisa Y. v. Comm'r of Soc. Sec.*, 570 F. Supp. 3d 993, 1002–03 (W.D. Wash. 2021) (rejecting the same presumed-harm argument); *Brooks v. Kijakazi*, No. 1:21CV609, 2022 WL 2834345, at *9–*10 (M.D.N.C. July 20, 2022) (same); *Robinson v. Kijakazi*, Civil Action No. 1:20-CV-00358-KDB, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021) ("The Plaintiff simply argues that all actions taken by the Commissioner are void due to the unconstitutional removal provision. However, *Collins* expressly rejects this view.").

Commissioner at the time, Andrew Saul, and no involvement in the ALJ's decision by the President at the time, Donald Trump. *See Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring) ("When an agency decision would not capture a President's attention, his removal authority could not make a difference."); *Stamm*, 577 F. Supp. 3d at 368. The plaintiff cannot show how the President's supposed inability to remove a Senate-confirmed commissioner without cause might have affected any ALJ's disability benefits decision, much less the decision on the plaintiff's specific claim. *See Stamm*, 577 F. Supp. 3d at 368. As this court has previously explained:

> The ALJ's decision was based upon an uncontested factual record and the application of established law, including case law, which generally cannot be changed by the Commissioner. There is no allegation suggesting a direct nexus between the adjudication of [the plaintiff's] disability claim by the ALJ and the alleged separation of powers violation in the removal statute that applies to the Commissioner. [The plaintiff's] allegations merely express general dissatisfaction with the outcome of the adjudication of his [social security] disability claim.

*Id.*

Accordingly, while the removal-limitation clause in § 902(a)(3) violates the separation of powers, it does not independently require the

court to reverse an ALJ's decision absent a showing of compensable harm, which has not been made in this case.

## B. State Agency Medical Consultant Opinions

The plaintiff contends that the ALJ erred in his evaluation of the medical opinions provided by two consultative examining psychologists, Karl A. Hoffman, Ph.D., and Andrew Cole, Psy.D.

When a non-treating medical source provides a medical opinion, the ALJ is required to consider it and decide what weight to give to it. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). The following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)–(5), 416.927(c)(2)–(5). None of these factors may be omitted or disregarded by the ALJ in considering the weight of the opinion. *See Casillas v. Astrue*, 671 F. Supp. 2d 635, 643–44 (E.D. Pa. 2009) (stating that the ALJ "must consider" the factors set forth in 20 C.F.R. § 404.1527(c) in determining what weight to give a medical

opinion); *Waldron v. Astrue*, No. 1:07-CV-2040, 2008 WL 4452350, at *1 (M.D. Pa. Sept. 30, 2008) (same). In addition, the ALJ must consider any other factors that tend to support or contradict the opinion, but only if brought to his or her attention. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).

The ALJ clearly considered Dr. Hoffman's May 2013 opinion, reviewing his findings in great detail. (Tr. 40.) Ultimately, the ALJ found Dr. Hoffman's opinion to be entitled only to "some weight." (*Id.*) In support, the ALJ stated:

> Overall, the undersigned affords this opinion only some weight and finds that it is only somewhat persuasive because it is not consistent with the overall record, including Dr. Hoffman's own observations upon examination of the claimant. Specifically, although Dr. Hoffman noted that claimant to have superficial insight and poor judgment under the circumstances of stress or complexity, he did not note any observations that would substantiate a moderate limitation in the claimant's ability to make work-related decisions. Conversely, Dr. Cole noted that the claimant had fair judgment and that he was only mildly impaired in that regard. Additionally, Dr. Hoffman opined that the claimant had a marked limitation in interacting with the public and with coworkers and a marked-to-moderate limitation in interacting with supervisors; however, apart from noting the claimant simply exhibited superficial insight, psychomotor agitations, and at least one instance of pressure of speech, he provided no other evidence to support these limitations. Additionally, the claimant reported that while he does not usually associate with others, he gets

along "good" with his fiancé and six children, goes to
church on a regular basis, and takes his children
places, such as doctor's appointments. These reported
activities in conjunction with the overall benign
findings on mental status examination do not reflect
anything more than a moderate limitation in
interacting with others. Additionally, the marked
limitations to interaction with the public and moderate
limitations with co-workers and moderate to marked
limitations with supervisors are not supported by
actual signs and laboratory findings, but instead the
doctor relies upon the self-reported subjective
limitations of the claimant. The doctor is not a treating
source and [saw] the claimant once. He relied upon the
self-reporting of the claimant and not upon . . . any
longitudinal treatment relationship, and there is no
evidence reported by the doctor that he relied upon any
actual evidence from any other medical source in
reaching these conclusions. As such, this portion of the
opinion is not very persuasive. The balance of the
opinion remains well supported and consistent with
the doctor's own findings and the longitudinal evidence
of record and has been considered in formulating the
limitations in the RFC. The undersigned notes that the
record[,] giving every benefit to the claimant[,]
support[s] no[] social limitations greater than limiting
his social interaction with he public. The claimant's
records do not reflect any interaction problems with his
providers or other[wise] document any significant
interaction problems in work related activities.
Nevertheless, in accommodating the claimant's alleged
report that he does not associate with others, the
undersigned has limited the claimant to no interaction
with the public in the above noted residential
functional capacity along with limiting him to
unskilled work as defined by the DOT that is low
stress, defined as only occasional decision making and
occasional changes in the work setting.

(Tr. 40 (citations omitted).)

In determining the amount of weight to give Dr. Hoffman's opinion, the ALJ here clearly articulated her consideration of factors (1) and (2), expressly describing Dr. Hoffman as a "consultative examiner" (Tr. 40) who conducted a single "consultative examination" of Rowe (Tr. 38). With respect to factors (3) and (4), the ALJ's decision clearly documents her consideration of the opinion's lack of support by medical evidence, and its inconsistency with the record as a whole. (*Id.*) There is no apparent indication in the record of Dr. Hoffman's medical specialization beyond psychology. No additional factors appear to have been brought to the ALJ's attention for consideration.

The ALJ likewise clearly considered Dr. Cole's November 2015 opinion, reviewing Cole's findings in great detail as well. (Tr. 41–42.) Ultimately, the ALJ found Dr. Cole's opinion to be entitled only to "some weight." (*Id.*) In support, the ALJ stated:

> [T]he undersigned has considered the opinion of Dr. Andrew Cole, a consultative examiner, from November of 2015, who opined that the claimant had a moderate limitation in understanding, remembering, and carrying out complex instructions and making complex work-related decisions and mild limitation in his ability to understand, remember, and carry out simple instructions and make simple work-related decisions.

Dr. Cole also opined that the claimant had moderate to marked limitations in interacting with the public and coworkers and a moderate limitation in interacting with supervisors. The undersigned gives this opinion some weight and finds it is somewhat persuasive. The mild to moderate limitations for instructions and decision making are consistent with and supported by the record, and have been accounted for in the above "paragraph B" findings and in the residual functional capacity, which limits the claimant to unskilled work as defined by the DOT that is low stress, defined as occasional decision making and occasional changes in the work setting. However, the moderate limitations for interacting with supervisors and coworkers and the marked limitations for interacting with the public are not supported by or consistent with the record. Dr. Cole noted that the claimant had fair judgment and that he was only mildly impaired in that regard. Additionally, Dr. Hoffman opined that the claimant had marked limitation in interacting with the public and with coworkers and a marked-to-moderate limitation in interacting with supervisors; however, apart from noting the claimant simply exhibited superficial insight, psychomotor agitations, and at least one instance of pressure of speech, he provided no other evidence to support these limitations. Additionally, the claimant reported that while he does not usually associate with others, he gets along "good" with his fiancé and six children, goes to church on a regular basis, and takes his children places, such as doctor's appointments. These reported activities in conjunction with the overall benign findings  on mental status examination do not reflect anything more than a moderate limitation in interacting with others. Additionally, the marked limitations to interaction with the public and moderate limitations with co-workers and moderate limitations with supervisors are not supported with actual signs and laboratory

findings, but instead the doctor relies upon the self-reported subjective limitations of the claimant, including "dysphoria/anxiety, memory, concentration problems, distrustful of people" despite an examination noting the claimant had intact attention, concentration, and memory. Additionally, Dr. Cole is not a treating source and examined the claimant one time only. He relied upon the self-reporting of the claimant and not upon any longitudinal treatment relationship. Of note, the claimant's treating providers consistently noted the claimant was cooperative with good eye contact and coherent and goal-directed thought processes, which certainly are not findings indicative of any marked limitation. As such, this portion of the opinion is not very persuasive. . . .

(Tr. 41–42 (citations omitted).)

In determining the amount of weight to give Dr. Cole's opinion, the ALJ here clearly articulated her consideration of factors (1) and (2), expressly describing Dr. Cole as a "consultative examiner" (Tr. 41) who "is not a treating source and examined the claimant one time only." (Tr. 41–42). With respect to factors (3) and (4), the ALJ's decision clearly documents her consideration of the opinion's lack of support by medical evidence, and its inconsistency with the record as a whole. (*Id.*) There is no apparent indication in the record of Dr. Cole's medical specialization beyond psychology. No additional factors appear to have been brought to the ALJ's attention for consideration.

Accordingly, the Court finds that there is substantial evidence in the administrative record to support the ALJ's findings that the opinions of the consultative examining psychologists, Dr. Hoffman and Dr. Cole, were entitled to "some weight," and that her determination of the weight given to them was adequately explained and otherwise based upon a correct application of relevant law.

## C. Vocational Expert Hypothetical Question

The plaintiff contends that the ALJ's step-five determination is not supported by substantial evidence because the ALJ failed to include all of Rowe's claimed limitations or impairments in the hypothetical posed to a vocational expert at the administrative hearing.

It is well settled, however, that a hypothetical question posed to a vocational expert need only account for credibly established limitations or impairments. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Here, the ALJ explicitly considered and addressed the plaintiff's severe and medically determinable non-severe impairments, his subjective complaints of pain and other symptoms, and the various medical opinions in the record. The hypothetical posed to the vocational expert included all limitations or impairments the ALJ had found

credible. In light of all the evidence, and the ALJ's reasoned consideration of it, we find no error in the ALJ's conclusions with respect to the plaintiff's functional limitations or impairments.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Rowe was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated: March 31, 2023                         ***s/Joseph F. Saporito, Jr.***
                                              JOSEPH F. SAPORITO, JR.
                                              United States Magistrate Judge